## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**TERESA BIALASZEWSKI,**

      **Plaintiff,**

  **v.**
                            **CASE NO. 2:06-CV-1063**
                                    **JUDGE EDMUND A. SARGUS, JR.**
                                    **MAGISTRATE JUDGE MARK ABEL**

**TITANIUM METALS CORPORATION,**
**dba TIMET,**

      **Defendant.**

### OPINION AND ORDER

      This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. #36), Plaintiff's Memorandum in Opposition to Defendant's Motion (Doc. #39), and Defendant's Reply in Support of its Motion (Doc. #41). For the reasons stated herein, the Court GRANTS Defendant's Motion for Summary Judgment.

### I.

      Plaintiff, Teresa Bialaszewski ("Plaintiff") asserts claims against her former employer, Defendant Titanium Metals Corporation ("Defendant") for alleged violations of: 1) Ohio Revised Code § 4112.02(A), *et seq.*; 2) public policy; 3) the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2617, *et seq.*; and 4) the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, *et seq.* The complaint also contains a claim for equitable estoppel, which the parties have briefed as one for promissory estoppel. The Court has jurisdiction over

this action under 28 U.S.C. §1332.

## II.

The following facts are taken from the pleadings, depositions, and motions, and are undisputed, except as otherwise noted.

Defendant, a manufacturer and distributor of titanium metal products, hired Plaintiff in September, 1999. Plaintiff worked as an accounting coordinator in Defendant's Toronto, Ohio facility, responsible for general accounting, auditing, billing transactions, and sales analysis, until September 24, 2004.

### A.    **Defendant's Benefits and Leave Policies**

Defendant's FMLA policy provides its employees with an aggregate of up to 12 weeks of leave in a 12-month period for qualifying reasons. Defendant's written FMLA "Policies and Procedures" states, in part: "[t]he failure of an employee to return to work upon the expiration of a family leave could subject the employee to immediate termination unless an extension is granted . . . employees who fail to return to work after exhausting their 12 weeks of leave may not return to their original or equivalent position with similar pay and benefits. . . . Considerations of a request for an additional leave of absence are at the sole discretion of the Company." (12/01/2002 Family and Medical Leave of Absence, Policies and Procedures No. 2010, Def's Ex. 7 to the deposition of Plaintiff.)

Defendant also extended salary-continuance/short-term disability benefits to qualified employees. Those employed for more than five years were eligible for 100% of pay for up to 26 weeks. Defendant administered the Salary Continuance benefit concurrently with FMLA leave. (7/1/2003 Salary Continuation/Short-Term Disability, Policies and Procedures No. 3050, Def.'s Ex. 5 to the deposition of Plaintiff.)

**B.    Plaintiff's Medical Leave**

Beginning September 24, 2004, Plaintiff took a medical leave of absence from her employment with Defendant to be treated for her depression and anxiety. Plaintiff testified that her depression resulted from a death in the family and stress at work.[1]

Defendant's benefits coordinator provided Plaintiff with the necessary applications and information regarding Defendant's FMLA and short-term disability policies. On November 1, 2004, Defendant communicated to Plaintiff that she was eligible for up to 26 weeks of paid leave under Defendant's salary continuance policy, to run concurrently with 12 weeks of FMLA leave. Plaintiff applied for and received her full salary for the months of October, November and December, 2004 while on FMLA leave. Plaintiff's doctor confirmed that Plaintiff could not return to work throughout her 12 weeks of leave, which ended December 20, 2004. On December 22, 2004, Defendant sent a letter to Plaintiff informing her that her FMLA benefits had been exhausted. The letter states that Plaintiff was no longer guaranteed her former position, but that she could request additional leave and salary continuation benefits, if medically necessary. Plaintiff requested additional leave, stating that she "hoped" to return to work in February, 2005, depending on her doctor's release. Defendant approved additional short term disability leave, and continued to pay Plaintiff under the salary continuance policy. On

---

[1]    Although Plaintiff's response to Defendant's motion emphasizes that the complaint that she posted, anonymously, to Defendant's "MySafeWorkplace" website on September 24, 2004, Plaintiff makes no effort to show a causal connection between her complaint and her termination six months later. The Court finds no connection between her complaint, which Plaintiff testified she filed as a result of conflicts she experienced with her entire department, and the circumstances of Plaintiff's leave and subsequent employment status. At no time has Plaintiff alleged, to the Court or in the correspondence with Defendant contained in the record, that she was discharged or terminated as a result of the "MySafeWorkplace" complaint.

3

January 31, 2005, Defendant notified Plaintiff that her position had been eliminated by virtue of her job duties being absorbed by other employees, and extended an offer to apply for any open position with the company once she was released to work.

Plaintiff's doctor certified that Plaintiff was unable to work throughout December of 2004 and January and February of 2005. Plaintiff received 100% of her salary until March 25, 2005, the end of the 26-week benefit period. At the end of the short-term disability period, Plaintiff filed a claim for long-term disability, but withdrew the claim shortly thereafter. She did not seek re-employment with Defendant.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); see also *Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

## III.

### A.    Disability Discrimination

The parties disagree on whether Plaintiff is relying on direct or indirect evidence to support her allegation of discrimination. The Court will therefore consider the tests for both direct and indirect discrimination claims.

If a plaintiff has direct evidence that the employer relied on his or her disability in making an adverse employment decision, or if the employer admits reliance on the disability, the plaintiff's burden is to establish that a) she is disabled and b) she is otherwise qualified for the position despite her disability with or without reasonable accommodation. *See Monette v.*

5

*Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996), citing *Rizzo v. Children's World*

*Learning Centers, Inc.*, 84 F.3d 758 (5th Cir.); *White v. York Int'l Corp.*, 45 F.3d 357, 360-61

(10th Cir. 1995). The employer then has the burden to prove that the proposed accommodation is

not reasonable. *See id.*

Without direct evidence of discrimination, Plaintiff must establish a *prima facie*

case that:

> 1) [she] is disabled; 2) otherwise qualified for the position, with or without reasonable
> accommodation; 3) suffered an adverse employment decision; 4) [Defendant] knew or
> had reason to know of [her] disability; and 5) the position remained open while
> Defendant sought other applicants or the disabled individual was replaced. The defendant
> must then offer a legitimate explanation for its action. If the defendant satisfies this
> burden of production, the plaintiff must introduce evidence showing that the proffered
> explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of
> persuasion at all times.

*Monette*, 90 F.3d 1173, 1186-1187 (6th Cir.1996).

An individual is "disabled" within the meaning of the Americans with Disabilities

Act, 41 U.S.C. Sec. 12101, *et seq.*, if he or she: (a) has "a physical or mental impairment that

substantially limits one or more of the major life activities of such individual," (b) has "a record

of such impairment," or (c) is "regarded as having such an impairment." 42 U.S.C. § 12102(2).[2]

The Court does not need to determine whether Plaintiff is "disabled" within the meaning of the

statute, because as set out below, Plaintiff never attempted to return to work for Defendant, and

therefore cannot establish that she was discriminated against.

---

[2]     "Both federal and Ohio disability discrimination actions require the same
analysis." *Martin v. Barnesville Exempted Village Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 (6th
Cir. 2000). The same standards applicable to Plaintiff's ADA claims apply to her claims under
Ohio law, O.R.C. Sec. 4112.02(A). *See Cloke v. West Clermont Local Sch. Dist. Bd. of Educ.*,
409 F. Supp. 2d 927, 933 (S.D. Ohio 2006); *City of Columbus Civil Serv. Comm'n v. McGlone*,
82 Ohio St. 3d 569, 697 N.E.2d 204 (Ohio 1998).

6

Assuming for purposes of this analysis that Plaintiff can establish that she is disabled, under either theory of discrimination Plaintiff also has the burden to prove that she was capable of performing her job, with or without a proposed reasonable accommodation. The record is devoid of evidence that Plaintiff ever attempted to return to work, despite being told on several occasions that she needed a release from her doctor and a physical if she intended to return to work. Plaintiff never informed Defendant that she was capable of resuming her job duties. She did not notify Defendant of her medical release, and did not schedule a return to work physical. Also absent from the factual record is any evidence that Plaintiff proposed a reasonable accommodation that would allow her to return to work. Plaintiff did not request guaranteed employment beyond 12 weeks or additional leave (paid or unpaid) beyond 26 weeks. Most importantly, when she was released and able to work, Plaintiff did not apply for any position that Defendant had open. There is no evidence in the record that such an application to Defendant would have been futile. Plaintiff does not suggest, for example, that her job had been filled by someone less qualified, that there were no jobs available for which she was qualified, or that Defendant had a history of refusing to re-hire employees following a leave of absence.

To be clear, this is not a case where an employee takes an authorized medical leave of absence, and the employer hires another person to fill the job and refuses to re-instate or to re-hire the employee to a similar position. Here, there is no way of knowing what Defendant would have done had Plaintiff certified her ability to return to work after 26 weeks and re-applied, or even requested a reasonable accommodation. The Court will not speculate on whether Defendant might or might not have re-hired Plaintiff had she tried to return to work.

If Plaintiff is unable to point to a factual dispute as to the elements she must

7

prove, the burden does not shift to Defendant to offer a nondiscriminatory, legitimate explanation

for its actions, or, under a theory of direct discrimination, to explain why a proffered

accommodation was not reasonable. Because the Court finds that Plaintiff cannot meet her

burden to establish that she was capable of returning to work with or without a reasonable

accommodation, the Court does not need reach the issues of whether Defendant's actions were

legitimate and nondiscriminatory or whether Defendant rejected a reasonable accommodation.

For the foregoing reasons, Plaintiff's claim of disability discrimination is

dismissed.

**B.**    **Public Policy Wrongful Termination**

Ohio law does not "recognize a common-law claim when remedy provisions are

an essential part of the statutes on which the plaintiff depends for the public policy claim and

when those remedies adequately protect society's interest by discouraging the wrongful conduct."

*Leininger v. Pioneer Nat'l Latex*, 115 Ohio St. 3d 311, 317 (2007). The Ohio Supreme Court has

explicitly rejected a cause of action for wrongful discharge when it is based on a violation of the

FMLA or O.R.C. § 4112. *See Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 246, 773 N.E.2d

526 (Ohio 2002) ("Ohio does not recognize a cause of action for wrongful discharge in violation

of public policy when the cause of action is based solely on a discharge in violation of the

FMLA"); *Leininger*, 115 Ohio St. 3d at 319 (holding that plaintiff had no public policy cause of

action for alleged age discrimination violation of O.R.C. § 4112).

Plaintiff cannot maintain a separate public policy discrimination claim because

her allegations concern actions: 1) prohibited by federal and state employment law statutes and 2)

for which those statutes provide adequate remedies. *See, e.g., Leininger, supra*, 115 Ohio St. 3d

8

at 318 ("R.C. 4112.99 provides an independent civil action to seek redress for any form of

discrimination identified in the chapter."); *see also Ferguson v. Quebecor World Johnson*, 2008

U.S. Dist. LEXIS 13088, n.4 (N.D. Ohio 2008) (public policy disability discrimination claim

foreclosed by the holding in *Leininger*).  Even if Plaintiff could bring a public policy claim under

these circumstances, it would fail for the reasons discussed in the sections above relating to

Plaintiff's statutory discrimination claim.

   In light of the Ohio Supreme Court's holding in *Leininger*, this Court hereby

dismisses Plaintiff's complaint for the common law tort of disability discrimination in violation

of public policy.  The remedies contained in the federal and state statutes under which Plaintiff

seeks to hold Defendant liable contain thorough and fully adequate remedies to repair the wrongs

and damages alleged by Plaintiff.

   **C. FMLA Retaliation**

   In order to establish an FMLA retaliation claim, Plaintiff must demonstrate that:

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that
> she was exercising her rights under the FMLA; (3) after learning of the employee's
> exercise of FMLA rights, the employer took an employment action adverse to her; and
> (4) there was a causal connection between the protected FMLA activity and the adverse
> employment action. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003).
> [Plaintiff] bears the burden of demonstrating a causal connection. *Id.*  She must show
> that the employer's stated reason for terminating her was pretextual and that the true
> reason for her dismissal was her medical leave. *Id.*

*Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).

   Plaintiff has not presented evidence of a causal connection between her FMLA

leave and her termination.  The FMLA mandates that qualified employees who return to work

within the 12-week period of statutory leave are entitled to be reinstated to their previous

position, or its equivalent. *See* 29 U.S.C. § 2614(a)(1). Once the 12-week period ends,

however, employees who remain "unable to perform an essential function of the position because

of a physical or mental condition . . . [have] no right to restoration to another position under the

FMLA." 29 C.F.R. § 825.214(b). The Court of Appeals for the Sixth Circuit "has consequently

held that an employer does not violate the FMLA when it fires an employee who is indisputably

unable to return to work at the conclusion of the 12-week period of statutory leave." *Edgar v.

JAC Prods.*, 443 F.3d 501, 506-507 (6th Cir. 2006), citing *Cehrs v. Northeast Ohio Alzheimer's

Research Center*, 155 F.3d 775, 784-85 (6th Cir. 1998) (finding no FMLA violation because the

evidence was undisputed that the employee would not have been able to return to work by the

statutory deadline); *Williams v. Toyota Motor Mfg., Ky., Inc.*, 224 F.3d 840, 845 (6th Cir. 2000)

(concluding that the employee had suffered no harm when she was terminated because she was

unable to resume her duties by the end of the FMLA leave period), rev'd on other grounds, 534

U.S. 184 (2002).

It is clear from the record that Defendant complied with the FMLA in

administering Plaintiff's leave. Plaintiff's doctors certified that Plaintiff was unable to work for

26 weeks. She has not identified facts suggesting that her termination was any more than a

straightforward application of Defendant's FMLA policy, based on Plaintiff's inability to return

to work at the end of her leave. Plaintiff's claim for FMLA discrimination is therefore

dismissed.

### D.    Estoppel

Defendant's short-term disability policy states: "there is no guarantee that an

employee may return to the same position unless Salary Continuation/ Short-term Disability is

10

administered concurrently with the FMLA policy." The Court does not need to reach the issue of whether this provision is an unambiguous guarantee of employment beyond 12 weeks. Even if Plaintiff is correct in reading the clause to constitute a guarantee of employment for 26 weeks, the law did not require Defendant to make such a guarantee. Therefore, Defendant could also condition re-employment upon Plaintiff notifying Defendant that she was medically able to return to work and re-applying for a position with the Company. Plaintiff did not re-apply for any position, and never attempted to return to work. There are no facts in the record establishing that her failure to return to work was the result of detrimental reliance on a promise of continued employment. Plaintiff's estoppel claim is hereby dismissed.

## E.    ERISA Discrimination

ERISA regulates "employee welfare benefit plans," defined by the statute as:

> any plan, fund or program which was heretofore established or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such a plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability . . . .

29 U.S.C. § 1002(1).

The Secretary of Labor has promulgated a regulation that excludes certain "payroll practices" from the application of ERISA. *See* 29 C. F. R. § 2510.3-1(b)(2). The regulation expressly provides that an "employee benefit welfare plan" shall not include:

> Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons . . . .

29 C. F. R. § 2510.3-1(b)(2).

11

Applying Section 2510.3-1(b)(2) to Defendant's Salary Continuation/Short Term Disability policy, the Court finds that the benefit is a payroll practice exempted from ERISA regulation. Plaintiff does not dispute that she received her "normal compensation," paid "on account of periods of time during which the employee is physically or mentally unable to perform his or her duties," and paid "out of the Defendant's general assets." 29 C.F.R. § 2510.3-1(b)(2). *See Havey v. Tenneco. Inc.*, 2000 U.S. Dist. LEXIS 1694 (N.D. Ill 2000); *Matinchek v. John Alden Life Ins. Co.*, 93 F.3d 96 (3d Cir. 1996).

Because the Court finds that Defendant's short-term disability policy is not part of an employee welfare benefit plan governed by ERISA, but is a "payroll practice" exempted from ERISA requirements, Plaintiff's complaint for ERISA discrimination fails to state a claim for relief under ERISA, and is dismissed.

## IV.

This Court is constrained to address the language included in Defendant's Reply Memorandum that "had Bialaszewski known that her right to reinstatement ended with the exhaustion of her FMLA leave, she and her doctor would not have certified that she was medically unable to work for the entire twenty-six weeks that she received salary continuance benefits." (Def.'s Reply Mem. at 1.) This language misstates the facts and distorts Plaintiff's arguments. The accusation of fraudulent intent is not supported by any facts in the record, as evidenced by the fact that Defendant fails to cite to the record when repeating the charge throughout its memoranda. Defendant TIMET never questioned whether Plaintiff's leave was medically necessary, and there is no hint of fraud in the record. Defendant's aspersions amount to no more than a conspiracy theory that lacks any connection to the facts or to Plaintiff's claims.

12

The Court admonishes Defendant's counsel for alleging fraud in the absence of any supporting facts.  Further such conduct will invite formal sanctions.

### V.

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. # 36) is **GRANTED**.  The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendant.

**IT IS SO ORDERED.**

6 -10 -2008

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

13